UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Unite Here Local 1, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:24-cv-00707 |
| v. ) | |
| ) | Judge April M. Perry |
| Magnificent Mile Hotel Management LLC, ) | |
| d/b/a Chicago Hotel Collection, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Before the Court are Plaintiff Unite Here Local 1's motion to confirm arbitration award [28] and Defendant Magnificent Mile Hotel Management LLC's cross-motion to vacate arbitration award [30]. For the reasons detailed herein, Plaintiff's motion is granted, and Defendant's motion is denied.

**BACKGROUND**

Defendant and Plaintiff are parties to a collective bargaining agreement ("CBA") and Letter of Agreement ("Agreement"). Doc. 8 at 2. The Agreement includes a provision requiring arbitration in certain circumstances, including for grievances that involve employee terminations. *Id*. To select arbitrators, the Agreement states that "unless the Union and the Employer agree upon an Arbitrator, the Arbitrator shall be selected by random drawing" from a list of nine arbitrators. *Id.* at 3. On December 8, 2023, the parties' representatives met via Zoom meeting to select an arbitrator for an underlying grievance. *Id.* at 5. Plaintiff's representative proceeded to share their screen, enter the names of the nine prospective arbitrators on www.random.org, and press the command to generate a random number list. Doc. 14 at 5; Doc. 16-1 at ¶ 8. An unrelated arbitration was pending between the parties before Arbitrator Peter Meyers, so Defendant requested that his name be left off the list. *Id*. Plaintiff declined, and the website's randomized selector chose Peter Meyers as the designated arbitrator. *Id*.

There was no dispute regarding the validity of the arbitration agreement or the arbitrability of the grievance. But Defendant did object to the selection of Peter Meyers through the randomized online program. Doc. 9. Defendant framed the standoff as a "lapse" under Section 5 of the Federal Arbitration Act. *See* 9 U.S.C. § 5 (noting that a court has jurisdiction to appoint an arbitrator "if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire …"). After briefing and oral argument, the Court declined to appoint an arbitrator, finding that the arbitrator had been selected "in a reasonable manner consistent with

the text of the CBA." Doc. 21. The Court therefore granted Plaintiff's Motion to Compel Arbitration. *Id*.

The case proceeded to arbitration and Arbitrator Meyers conducted a hearing and then issued a written report with his findings. Doc. 28 at 8-27. The grievance at issue involved Grievant's use of a knife while at work. It was undisputed at the hearing that Grievant regularly carried a knife, that he used it at work for cutting down boxes and other similar tasks, and that his supervisors knew this. *Id*. at 15, 17-18. On September 14, 2023, however, Grievant had his knife in his hand for "comfort" and was flicking it in a way that made another employee uncomfortable. *Id*. at 16. Arbitrator Meyers found that the surveillance video showed that the knife was out for a short period of time and then was returned by Grievant to his pocket. *Id*. at 24. When management intervened, Grievant produced the knife and management determined that it was 3 ½ inches long and therefore illegal. *Id.* at 13. Management called the police, who ultimately responded and refused to arrest Grievant; the police did confiscate the knife, apparently telling Grievant to use a fidget spinner instead. *Id*. at 18, 20. Three days later, Grievant was terminated for violating Defendant's zero tolerance policies prohibiting intimidation, workplace violence, and possession of weapons. *Id*. at 18, 21.

After considering all of this, Arbitrator Meyers determined that Defendant had not met its burden of establishing just cause for the termination. In this case, just cause required a showing that Grievant violated Defendant's rules, that the violation was serious enough to justify the imposition of discipline, that the level of discipline was not arbitrary or capricious, and that the decision was not discriminatory or too harsh. *Id*. at 22. Arbitrator Meyers determined that this standard had not been met because, among other things, Grievant had not acted in a vicious and threatening manner toward his colleague and hotel management knew previously that Grievant carried the knife with him. *Id*. at 25-26. Arbitrator Meyers directed Defendant to reinstate the Grievant with full backpay, minus a 10-day suspension and minus interim earnings, but with seniority and benefits intact. *Id*. at 27.

Defendant has refused to comply with the arbitrator's order. It now argues that it should not have to, both because the arbitrator exceeded his powers and because the award was against public policy. Doc. 30 at 1.

## ANALYSIS

The Court begins with Defendant's argument that the arbitrator exceeded his powers. This is, in essence, a rehashing of Defendant's argument that Arbitrator Meyers should not have been selected: Defendant's sole argument is that Arbitrator Meyers exceeded his powers by having acted as arbitrator in this case at all. Defendant challenges this Court's order upholding Arbitrator Meyers' selection on two bases. First, Defendant argues that the Court erred by crediting Plaintiff's view of the facts rather than Defendant's. Doc. 30 at 1. Second, Defendant argues that the Court erred by finding that the use of a random computer selection tool was a "random drawing" under the terms of the Agreement. Doc. 30 at 2.

The Court notes that this case has been re-assigned to the current district judge since the hearing regarding selection of an arbitrator. Therefore, this judge cannot speak directly to the original judge's factual findings. The original judge's written ruling was, in part, as follows:

> [A]s Section 5's first sentence notes, the Court is bound to the text of the CBA: "if in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." 9 U.S.C. § 5. The CBA clearly provides for selection by "random drawing." *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787, 792 (7th Cir. 2013) ("Section 5 applies 'if no method be provided' in the contract-that is, if the parties use the sort of detail-free clause we have just imagined."); *see also Wellpoint Health Networks, Inc. v. John Hancock Life Ins. Co.*, 547 F. Supp. 2d 899, 914 (N.D. Ill. 2008), *aff'd sub nom. WellPoint, Inc. v. John Hancock Life Ins. Co.*, 576 F.3d 643 (7th Cir. 2009). Magnificent Mile creates no serious dispute to the validity of an online random number generator to conduct "random drawing." In fact, they acknowledge that they would have been amenable to drawing names out of a hat. It is apparent that Magnificent Mile is unhappy with the result of the drawing, but there is no "lapse" under Section 5 or compelling reason to allow a second bite at the selection process. *See Hunt v. Moore Bros., Inc.*, No. 15-CV-0433-MJR-SCW, 2016 WL 9454071, at *4 (S.D. Ill. Feb. 5, 2016). An arbitrator was selected in a reasonable manner consistent with the text of the CBA.

Doc. 21.

A review of the transcript of proceedings before the Court seems to amply support the above findings. Doc. 22. Ultimately, however, this judge cannot determine why any of this matters. To the extent Defendant believes that the Court should have appointed an arbitrator, nothing would have stopped the Court from appointing Arbitrator Meyers. Doc. 22 at 9 (as Defendant said in court: "You can appoint any name from the panel"); Doc. 9 at 6 ("Defendant Employer moves this Court … to appoint an arbitrator from the listing in the Letter of Agreement"). In fact, to the extent Defendant asks this Court to reconsider the original ruling, Doc. 31 at 1, presumably the Court could agree and appoint Arbitrator Meyers now, *nunc pro tunc* to the date when Defendant argues the court erred. Given that there were no concerns raised about Arbitrator Meyers' suitability or placement on the agreed list, Defendant was not "entitled to the appointment of someone *else* from the list of arbitrators," Doc. 31 at 3 (emphasis added). Defendant was, at best, just entitled to the appointment of someone the Court chose from a list that included Arbitrator Meyers. This seems like the very definition of harmless error (to the extent there was error at all, which the Court does not find to be the case).

Defendant next argues that the arbitrator's decision to reinstate Grievant was against public policy because Grievant engaged in a "menacing wielding of a dangerous weapon toward another person" which is "against a well-defined and dominant policy against violence in the workplace and especially against women." Doc. 30 at 3. In reviewing the video evidence, the arbitrator's findings, the relevant case law, and the arguments of the parties, the Court declines to find the arbitrator's decision was against public policy.

Defendant's entire argument rests on the video of the knife incident, which Defendant argues shows Grievant "staring at [his colleague] with a menacing expression on his face, he pulls a knife out of this pocket. He snaps his wrist hard to flick open the blade and holds out the knife. He then continues advancing toward her, talking and gesticulating until he and she are out of camera range." Doc. 31 at 11-12. Suffice it to say, Defendant's opinion of what the video depicts is very different from the arbitrator's. And, frankly, both opinions are different from this Court's.[1] Which is, ultimately, why we have standards of review.

The Supreme Court has warned that "Judicial review of a labor-arbitration decision … is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). The arbitrator's factfinding may be "improvident, even silly," and it will not "provide a basis for a reviewing court to refuse to enforce the award. *Id*. "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn the decision." *Id*. (internal citations and quotation marks omitted). Moreover, courts "have no authority to disagree" with an arbitrator's honest judgment about the appropriate remedy. *United Paperworkers Intern. Union, AFL-CIO v. Misco*, 484 U.S. 29, 38 (1987). In light of this clear mandate from the Supreme Court, it would be inappropriate for this Court to reweigh the facts as determined by the arbitrator or try to replace the arbitrator's conclusion about the appropriate remedy with the Court's own.

The final question then becomes whether the arbitrator's award violated a "well defined and dominant" public policy. *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). In making such a determination courts are not supposed to ask whether, generally, the award is in the public interest. *Misco*, 484 at 43. Rather, the question is "whether the award created any explicit conflict with other laws and legal precedents." *Id*. (quotations omitted). While the public policy exception defies precise definition, courts agree that it is "limited and narrow" and "has been successfully invoked only very rarely." *Univ. of Chicago Med. Ctr. v. Teamsters Local 743*, 235 F. Supp. 3d 1023, 1026 (N.D. Ill. 2016). The Court is aware of no case that finds that a public policy against workplace violence has been violated by an employee's reinstatement. *Id*. To the contrary, courts have upheld reinstatement when employees: (1) fired gunshots into a supervisor's unoccupied car after being denied a promotion; (2) brought a gun to work; and (3) made threatening statements to and about co-workers. *Id*. at 1026-27 (collecting cases). In all of these cases, the arbitrators had decided that the grievants were unlikely to engage in future violence, and the courts were not permitted to overturn those factual findings. *Id*.

In this case, the arbitrator considered and rejected Defendant's arguments that Grievant posed a future safety risk. Arbitrator Meyers decided instead that Grievant was "goofing around" with the knife and was not attempting to threaten his coworker. Doc. 28 at 25-26. He specifically

---

[1] It appears to this Court that the knife is taken out of Grievant's pocket by :38 on the video clock, at :41 that Grievant is smiling at his colleague, and at :43 the knife is being returned to Grievant's back pocket. Doc. 32.

noted that the police who came to the scene to investigate determined that the appropriate response was to tell Grievant to get a fidget spinner. *Id.* at 26. Arbitrator Meyers further noted that Grievant had been employed by the hotel for sixteen years without any disciplinary record and had no "bad blood" with the coworker at issue. *Id*. Given the arbitrator's factual findings and the narrow scope of the public policy exception, this Court cannot conclude that the arbitrator's decision violated public policy.

## **CONCLUSION**

The Court confirms the arbitration award in this case, granting Plaintiff's motion [28]. Defendant's corresponding motion to vacate the arbitrator's award [30] is denied.

Entered: 1/14/2025

*April M Perry*

United States District Judge